## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12-00581 |
| | ) | |
| THE SHOREBANK CORPORATION, et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors.[1] | ) | *Chapter 11* |
| | ) | |
| | ) | Hon. A. Benjamin Goldgar |
| | ) | |

**Objection Deadline:  August 17, 2012 at 4:00 p.m.
(prevailing Central Time)
Hearing Date: August 22, 2012 at 10:00 a.m.
(prevailing Central Time)**

## COVER SHEET FOR APPLICATION FOR PROFESSIONAL COMPENSATION[2]

| | |
|---|---|
| Name of Applicant: | Skadden, Arps, Slate, Meagher & Flom LLP |
| Authorized to Provide Professional Services to: | The ShoreBank Corporation and its Affiliated Debtors and Debtors-in-Possession |
| Date of Order Authorizing Employment: | February 1, 2012 |
| Period for Which Compensation is Sought: | Case Period:  January 9, 2012 through June 29, 2012 |
| Amount of Fees and Reimbursement Sought: | Amount of compensation sought to be allowed as actual, reasonable, and necessary:              $361,989<br>Amount of reimbursement sought to be allowed as actual, reasonable, and necessary:        $4,583<br>Total amount of fees and expenses sought to be **allowed**: **$366,572** |

---

[1]   The Debtors consist of: The ShoreBank Corporation (EIN: 36-2749995); ShoreBank Capital Corporation (EIN: 36-2954117); ShoreBank Development Corporation (EIN: 36-2950598); ShoreBank Pacific Corporation (EIN: 91-1837395); Shore Overseas Corporation (EIN: 36-4080746); ShoreCap Management, Ltd. (EIN: 61-1452284)]; ShoreBank Lands Corporation (EIN: [●]); ShoreBank New Markets Fund, Inc. (EIN: 41-2223726); SBK NMTC Fund I, LLC (EIN: 41-2223728); SBK NMTC Fund II, LLC (EIN: 41-2223731); SBK NMTC Fund III, LLC (EIN: 41-2223734); SBK NMTC Fund IV LLC (EIN: 41-2223735).

[2]   This cover sheet is intended to comply with the form approved by the court and published by the clerk, as required by Local Bankruptcy Rule 5082-1.

|  | Amount of compensation already paid: <u>$68,869</u><br>Amount of reimbursement already paid:    <u>$2,324</u><br><br>Total amount of holdback fees sought: $<u>7,652</u><br>Total amount of previously unrequested fees:[3] $<u>285,468</u><br>Total amount of previously unrequested expenses: $<u>2,259</u><br>Total previously unpaid fees and expenses (including unrequested fees, expenses, and holdback) sought to be **paid**: **$295,379** |
|---|---|
| This is an/(a): | __Interim    _X_ Final Application |

Dated: Chicago, Illinois
        July 31, 2012

*/s/ George N. Panagakis*
George N. Panagakis (ARDC No. 06205271)
Justin M. Winerman (ARDC No. 6298779)
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, Illinois 60606-1720
Phone: (312) 407-0700

Counsel for the Debtors and Debtors-in-Possession

_____

(cont'd from previous page)

[3]   Skadden did not seek payment for monthly fee statements for the periods from February 1, 2012 through June 29, 2012.  It is requesting full payment of those fees by this First and Final Fee Application.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

| | |
|---|---|
| In re: | ) Case No. 12-00581 |
| | ) |
| THE SHOREBANK CORPORATION, et al., | ) (Jointly Administered) |
| | ) |
| Debtors.[1] | ) *Chapter 11* |
| | ) |
| | ) Hon. A. Benjamin Goldgar |
| | ) |
| | **Objection Deadline: August 17, 2012 at 4:00 p.m.** |
| | **(prevailing Central Time)** |
| | **Hearing Date: August 22, 2012 at 10:00 a.m.** |
| | **(prevailing Central Time)** |

---

**FIRST AND FINAL FEE APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AS COUNSEL TO THE DEBTORS, SEEKING FINAL ALLOWANCE AND PAYMENT OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF CHARGES FOR PERIOD OF JANUARY 9, 2012 THROUGH JUNE 30, 2012**

Skadden, Arps, Slate, Meagher & Flom LLP and its affiliated law practice entities ("Skadden"), counsel for the above-captioned chapter 11 debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors" or the "Company") in their chapter 11 cases, submit this first and final application (the "Final Application") seeking final allowance and payment, to the extent unpaid, of compensation and reimbursement of expenses under 11 U.S.C. §§ 330 and 331 for the period from January 9, 2012 through and including June 29, 2012 (the "Case Period"), in the amount of $361,989 in fees and $4,583 in charges and disbursements, for an aggregate amount of $366,572 to be allowed, and an unpaid aggregate amount of $295,379 to be

---

[1]    The Debtors consist of: The ShoreBank Corporation (EIN: 36-2749995); ShoreBank Capital Corporation (EIN: 36-2954117); ShoreBank Development Corporation (EIN: 36-2950598); ShoreBank Pacific Corporation (EIN: 91-1837395); Shore Overseas Corporation (EIN: 36-4080746); ShoreCap Management, Ltd. (EIN: 61-1452284)]; ShoreBank Lands Corporation (EIN: [●]); ShoreBank New Markets Fund, Inc. (EIN: 41-2223726); SBK NMTC Fund I, LLC (EIN: 41-2223728); SBK NMTC Fund II, LLC (EIN: 41-2223731); SBK NMTC Fund III, LLC (EIN: 41-2223734); SBK NMTC Fund IV LLC (EIN: 41-2223735).

paid by the Liquidation Trust Administrator out of its bank account.[2]  In support of this Final

Application, Skadden represents as follows:

## BACKGROUND

1.        On January 9, 2012 (the "Petition Date"), each of the Debtors commenced a case by

filing a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et

seq., as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern

District of Illinois, Eastern Division (the "Bankruptcy Court" or the "Court").

2.        On April 18, 2012, the Debtors filed their Amended Disclosure Statement (Docket

No. 129) (the "Disclosure Statement").

3.        On June 12, 2012, the Debtors filed their Amended Joint Plan of Liquidation of The

ShoreBank Corporation and its Affiliated Debtors and Debtors-in-Possession, as modified June 12,

2012 (Docket No. 153) (as amended, the "Plan").

4.        On June 14, 2012, the Court entered its Order Confirming the Plan (Docket No. 159)

(the "Confirmation Order").

5.        The Effective Date of the Plan occurred on June 29, 2012.[3]

6.        Between the Petition Date and the Effective Date, the Debtors remained as debtors-

in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.        On March 2, 2012, the United States Trustee for the Northern District of Illinois

appointed an unsecured creditors committee pursuant to section 1102(a) of the Bankruptcy Code to

---

[2]    Skadden has already been paid $71,193 by the Debtors for compensation and expenses for January 2012, which
represents 90 percent of fees and 100 percent of expenses billed for that month.

[3]    Skadden's June invoice is labeled through June 30, 2012, a Saturday. No time was billed that day.  Therefore, fees
and disbursements sought to be allowed and paid are only for the Case Period (through and including June 29,
2012).

represent the unsecured creditors of the Debtors (the "Creditors' Committee").  No trustee or

examiner has been appointed in these chapter 11 cases (the "Chapter 11 Cases").

8.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28

U.S.C. § 157(b)(2).

9.     The statutory predicates for the relief requested herein are Sections 330 and 331 of

the Bankruptcy Code, Rules 2016 and 2017 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 5082-1 of the Local Bankruptcy Rules.

## **RETENTION OF SKADDEN**

10.     On the January 13, 2012, the Debtors applied to the Court for an Order Under

Bankruptcy Code Section 105, 327(a), and 329 and Bankruptcy Rules 2014 and 2016 Authorizing

Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP and Affiliated Law

Practice Entities as Attorneys for Debtors and Debtors-in-Possession Nunc Pro Tunc to the Petition

Date (the "Retention Application") to perform such legal services that are generally necessary to

enable the Debtors to faithfully execute their duties as debtors-in-possession including, among

others, the following professional services to the Debtors:

> (a)     advise the Debtors with respect to their powers and duties as debtors
> and debtors-in-possession in the continued management and operation of
> their businesses and properties;
>
> (b)     attend meetings and negotiate with representatives of creditors and
> other parties in interest and advise and consult on the conduct of the
> Chapter 11 Cases, including all of the legal and administrative requirements
> of operating in chapter 11;
>
> (c)     take all necessary action to protect and preserve the Debtors' estates,
> including the prosecution of actions on their behalves, the defense of any
> actions commenced against those estates, negotiations concerning all
> litigation in which the Debtors may be involved, and objections to claims
> filed against the estates;

3

(d)    prepare on behalf of the Debtors all motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

(e)    appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

(f)    prepare and negotiate on the Debtors' behalves a joint plan of liquidation, disclosure statement, and all related agreements and/or documents, and take any necessary action on behalf of the Debtors to obtain confirmation of such Plan; and

(g)    perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the Chapter 11 Cases.

11.    On February 1, 2012, this Court entered an order pursuant to 11 U.S.C. §§105, 327(a), and 329 and Bankruptcy Rules 2014 and 2016 Authorizing Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP and Affiliated Law Practice Entities as Attorneys for Debtors and  Debtors-in-Possession (the "Retention Order") (Docket No. 67)[4] authorizing the Debtors to employ Skadden as their counsel under the terms set forth in the Retention Application.

12.    In the Retention Application, the Debtors disclosed that Skadden's fees for professional services are based in part on its guideline hourly rates, which are periodically adjusted.[5]  The Debtors also disclosed in the Retention Application that Skadden's charges and disbursements are invoiced pursuant to Skadden's Policy Statement Concerning Charges and Disbursements, a copy of which is attached to the Engagement Agreement.  Certain charges and

---

[4]    A copy of the Retention Order and the Retention Application including  the supporting declaration can be found at Docket Nos. 67 and 37 respectively, and are incorporated herein as though fully set forth.  In addition, the Retention Application incorporates the terms of an engagement agreement dated July 30, 2010, between Skadden and The ShoreBank Corporation (the "Engagement Agreement"), a copy of which is attached as Exhibit B to the Retention Application.

[5]    A chart showing a summary of the hours incurred and value of the services performed by each professional and the position of each professional (partner, associate, or paraprofessional) is provided as Exhibit A.  As set forth in the Engagement Agreement, billing rates are periodically reviewed and revised.

4

disbursements are not separately charged under the bundled rate structure as described in the Retention Application.

13.      The procedures governing the rights of Skadden and other professionals to obtain interim payment for services rendered and expenses incurred are set forth in the Order Establishing Procedures of Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 68) (the "Interim Fee Order").

14.      As set forth in the Interim Fee Order, professionals in the Chapter 11 Cases were able to submit a monthly fee statement to the Debtors and other parties in interests, and in the event no objections were received, the Debtors were to pay 90 percent of the fees earned and 100 percent of the expenses requested in such monthly billing statement.  The remaining 10 percent of the fees are payable pursuant to court approval.  During the Case Period, Skadden only sought to be compensated for one monthly fee statement, for the month of January. Pursuant to that monthly fee statement, Skadden was paid $68,869 in fees earned and $2,324 in expenses incurred, for an aggregate amount of $71,193. Skadden is seeking final allowance for all fees billed and expenses incurred during the Case Period and payment for all remaining fees billed and expenses incurred during the Case Period that have not yet been paid, including the holdback amount for the January fee statement.

15.      Other than an arrangement between Skadden, Arps, Slate, Meagher & Flom LLP and its affiliated law practices and their members, there is no agreement or understanding between Skadden and any person for the sharing of compensation to be received for services rendered in these cases.

## OVERVIEW OF THE DEBTORS' BUSINESS

16.      Organized in 1973 and incorporated under the state of Illinois, SBK was America's first and leading community development and environmental bank holding company.  A pioneer in

5

developing programs and services that catalyzed economic opportunity, social equity, and environmental sustainability, SBK provided innovative financial services, products, and knowledge and played a founding role in the creation of a development finance industry committed to serving the needs of lower-income communities.

17.    SBK was a registered bank holding company for, among others, its subsidiary, ShoreBank, Chicago, IL, a state chartered non-member bank (the "Bank"), whose deposits were insured by the Federal Deposit Insurance Corporation (the "FDIC") up to the maximum amount permitted by law.  Prior to being closed, the Bank was subject to oversight and regulation by its primary regulator, the Illinois Department of Financial and Professional Regulation (the "IDFPR"). On August 20, 2010, the Bank was closed by the IDFPR (the "Bank Closure"), and the FDIC was named receiver for the Bank.  The FDIC sold substantially all of the assets of the Bank to Urban Partnership Bank.

18.    SBK's principal asset and source of income was its investment in the Bank.  The Bank Closure had a significant adverse affect on the Debtors' liquidity, capital resources, and financial condition.

**SERVICES RENDERED BY SKADDEN DURING THE CASE PERIOD**

19.    During the Case Period, Skadden assisted the Debtors in confirming their Plan as quickly as possible, which the Debtors were able to do approximately six months after the Petition Date.

20.    Skadden worked closely with the Debtors, the Creditors' Committee, the U.S. Trustee's office, and the Debtors' key creditors, including the FDIC and JPMorgan Chase Bank, N.A., to administer the estates and maximize the return for the Debtors' creditors.

21.    At the commencement of the Chapter 11 Cases, Skadden created different matter numbers or subject-matter categories (the "Matter Categories") to which its professionals assigned

6

the time billed by them, all of which are related to the tasks performed by Skadden professionals on

behalf of the Debtors.  All Skadden professionals kept a contemporaneous record of the time spent

rendering such services and, consistent with guidelines of the Office of the United States Trustee,

separated tasks in billing increments of one-tenth of an hour.  All of the services performed by

Skadden have been legal in nature and necessary for the proper administration of the Chapter 11

Cases.  Detailed time entries for each Skadden professional related to services performed during the

Case Period are attached hereto as Exhibits B-1 through B-6.[6]

22.     Skadden devoted approximately 82% of its time during the Case Period to the

following five (5) matters, each of which was responsible for fees in excess of $45,000: Disclosure

Statement / Voting Issues, Claims Admin. (General), Reorganization Plan / Plan Sponsors, Creditor

Meetings / Statutory Committees, and Case Administration.

23.     Skadden devoted the remainder of its time (approximately 18% in the aggregate) to

the following eleven (11) matters and incurred less than $15,000 in fees for each such matter:

Retention / Fee Matters (SASM&F), General Corporate Advice, U.S. Trustee Matters, Executory

Contracts (Personalty), Tax Matters, Asset Dispositions (General), Insurance, Retention/ Fee

Matters/ Objections (Other), Reports and Schedules, Business Operations / Strategic Planning, and

Litigation (General).

24.     As a result of its efforts during the Case Period, Skadden now seeks allowance of

$361,989 in fees calculated at the applicable guideline hourly billing rates of the Skadden

professionals who have worked on the Chapter 11 Cases and $4,583 in charges and disbursements

actually and necessarily incurred by Skadden while providing services to the Debtors during the

---

[6]   The detailed statement of services is meant to comply with Fed. R. Bankr. P. 2016(a) and Local Bankruptcy Rule
5082-1(C).

7

Case Period.  This Final Application reflects a voluntary deduction in Skadden's requested fees and

disbursements by $38,734.95, or approximately 10%.[7]

25.     Set forth below, in descending order based on the fees expended, are descriptions of

the principal activities, including details as to individual tasks performed within such activity, in

which Skadden professionals rendered professional services.

<u>MATTERS GREATER THAN $45,000</u>

 <u>Disclosure Statement/ Voting Issues</u>

26.     During the Case Period, Skadden devoted substantial time to the preparation of the

Disclosure Statement, and to evaluating various voting and tabulation issues with respect to the Plan.

Skadden consulted with the Debtors on a frequent basis to gather the information necessary to

ensure that the Disclosure Statement would include all factual and legal content necessary to satisfy

the "adequate information" requirement of section 1125 of the Bankruptcy Code.  In this regard,

Skadden attorneys, working with the Debtors, reviewed, analyzed, researched, and prepared

adequate disclosures of subjects, including, without limitation, (a) the Debtors' corporate structure

and business operations, (b) the prepetition capital structure of the Debtors, (c) developments in the

Chapter 11 Cases, (d) secured, priority, and general unsecured claims, (e) executory contracts, (f)

tax issues, (g) classification issues, (h) solicitation procedures, and (i) notice issues.

27.     During the Case Period, to prepare for the process of soliciting votes with respect to

the Plan and seeking approval of the Disclosure Statement, Skadden attorneys began drafting

notices for distribution with respect to the Disclosure Statement and Plan confirmation hearings, as

---

[7]   Skadden believes that the amounts requested in this Final Application are reasonable in relation to the services
rendered during the Case Period.  The amounts requested are already reduced to reflect the client
accommodations during the case described herein.  To the extent that a party objects to this Final Application,
Skadden reserves the right to recapture such client accommodations and seek up to the full amount of fees
actually incurred in connection with this engagement.

8

well as drafting a motion to approve the Disclosure Statement,[8] which also provided the procedural foundation for soliciting votes from creditors for acceptance or rejection of the Plan.

28.    Moreover, Skadden spent time analyzing issues related to voting and solicitation of the holders of the Debtors' junior subordinated debentures and related trust preferred securities.  In addition, Skadden discussed the Creditors' Committee objection to the Disclosure Statement, and worked with the Creditors' Committee consensually resolve all issues.

29.    On April 12, 2012, the Court approved the adequacy of the Disclosure Statement and the Solicitation Procedures Motion.  Following the approval of the Solicitation Procedures Motion, copies of the Plan solicitation materials were mailed to parties-in-interest, and along with the solicitation package, such parties either received a ballot or a notice as to why they were not entitled to vote on the Plan.  Following the mailing of the solicitation materials, Skadden professionals handled various inquiries from recipients regarding the Solicitation Procedures, and coordinated the tabulation of the ballots with the Debtors' claims agent.

30.    In connection with the foregoing services, Skadden professionals expended 109.6 hours during the Case Period for which Skadden seeks compensation of $72,775.  A general breakdown of these services is as follows:

| Name | Total Hours | Total Value |
|------|-------------|-------------|
| George N. Panagakis, Partner | 10.6 | $11,554 |
| Justin M. Winerman, Associate | 91.3 | $57,977 |
| Bradley G. Wilson, Associate | 1.1 | $638 |
| Amelia R. Boone, | 2.8 | $1,428 |

---

[8]    Motion for Order (I) Approving the Disclosure Statement and the Form and Manner of Notice of Hearing; (II) Setting a Hearing Date for Confirmation of the Plan and Related Hearing Deadlines; and (III) Approving Noticing, Voting, and Related Solicitation Procedures (Docket No. 60) (the "Solicitation Procedures Motion")

| Associate | | |
|---|---|---|
| Paraprofessionals | 3.8 | $1,178 |
| **Total** | **109.6** | **$72,775** |

Claims Administration

31.     During the Case Period, Skadden professionals devoted time to certain claims administration matters.  Skadden explained to the Debtors the importance of establishing a bar date as soon as possible after filing the case so that the Debtors could know of all outstanding prepetition claims, and, thus, Skadden drafted the bar date motion (the "Bar Date Motion").[9]

32.     On January 12, 2012, the Bankruptcy Court entered an order (Docket No 35) (the "Bar Date Order") establishing February 27, 2012 as the deadline for filing Claims (the "General Bar Date").  The Bar Date Order also established July 11, 2012, as the deadline for governmental units, as defined in the Bankruptcy Code, to file proofs of claim (the "Governmental Bar Date" together with the General Bar Date, the "Bar Dates").

33.     As of the Bar Dates, approximately 50 proofs of claim were filed against the Debtors. Prior to the Effective Date, Skadden assisted the Debtors in the process of preliminarily reviewing the proofs of claim and researching case law.  By reaching out to certain parties who filed proofs of claim, Skadden was able to resolve a number of claims, without the need for Bankruptcy Court intervention.  As a result, only a few claims still needed to be resolved by the Liquidation Trust Administrator. By resolving a number of disputed claims prior to the Effective Date, the Debtors exposure has been greatly reduced, and the liquidation trust administrator will be able to make a timely distribution to general unsecured creditors, while only having to deal with a few claims that still need to be resolved.

---

[9]     A copy of the Bar Date Motion can be found at Docket No. 11.

10

34.     In addition, Skadden professionals researched various legal issues related to certain claims, including novel and complex issues related to the FDIC Claim that involves still-developing case law.  To that end, Skadden informed the Debtors of various novel issues arising under sections 365(o) and 507(a)(9) of the Bankruptcy Code as well as recent decisions from bank holding company cases on ownership of tax refunds.

35.     In connection with the foregoing services, Skadden professionals expended 110.7 hours during the Case Period for which Skadden seeks compensation of $67,776.  A general breakdown of these services is as follows:

| Name | Total Hours | Total Value |
|------|-------------|-------------|
| George N. Panagakis, Partner | 4 | $4,360 |
| Justin M. Winerman, Associate | 67 | $42,547 |
| Bradley G. Wilson, Associate | 20.6 | $11,948 |
| Amelia R. Boone, Associate | 15 | $7,650 |
| Paraprofessionals | 4.1 | $1,271 |
| **Total** | **110.7** | **$67,776** |

Reorganization Plan/Plan Sponsors

36.     One of the primary goals of the Debtors' was to wind down their estates as efficiently as possible.  To that end, during the Case Period, Skadden professionals assisted the Debtors in the development, solicitation, confirmation, and implementation of the Plan on a time table that allowed the Debtors to go effective on its confirmed Plan less than six months after the Petition Date. During the less than six month duration of the Chapter 11 Cases, Skadden professionals devoted time to analyzing and crafting the Plan and to negotiating, drafting the pleadings, and implementing the component parts necessary to achieve such a goal.

11

37.     In addition, Skadden professionals participated in numerous Plan strategy session

with the Debtors' management.  In addition, the Debtors, with the assistance of Skadden, worked

with representatives of various creditors and counsel for the United States Trustee in addressing

components of the Plan structure in order to consider their comments and other developments in the

Chapter 11 Cases.

38.     The Debtors, with the assistance of Skadden, reached certain settlements embodied

in the Plan, including settlements with the FDIC and the indenture trustees for certain trust preferred

securities.  Moreover, Skadden drafted the Liquidation Trust Agreement, which was an exhibit to

the Plan, as well as other exhibits to the Plan.

39.     The Plan was unanimously accepted by all parties who voted on the Plan.  Moreover,

as a result of the efforts by the Debtors and Skadden, no objections to confirmation of the Plan were

filed, resulting in an uncontested confirmation hearing.  The Plan was confirmed by an order

entered on June 14, 2012.

40.     During the post-confirmation, pre-effective date time period Skadden assisted the

Debtors in their completion of various tasks, including drafting the notice of the occurrence of the

Effective Date and the administrative claims bar date and coordinating the occurrence of the

Effective Date through discussions with representatives of the Debtors, various creditors, and

representatives of the liquidation trust administrator.

41.     In connection with the foregoing services, Skadden professionals expended 83.9

hours during the Case Period for which Skadden seeks compensation of $59,804.  A general

breakdown of these services is as follows:

| Name | Total Hours | Total Value |
|------|-------------|-------------|
| George N. Panagakis, Partner | 18.2 | $19,838 |

| | | |
|---|---|---|
| Justin M. Winerman, Associate | 54.9 | $34,863 |
| Bradley G. Wilson, Associate | 6.5 | $3,770 |
| Paraprofessionals | 4.3 | $1,333 |
| **Total:** | **83.9** | **$59,804** |

Creditor Meetings/Statutory Committees

42.    This category of time relates to meetings with creditor constituencies and the

Creditors' Committee and its financial advisors.  For example, Skadden attended the formation /341

creditors' meeting.  Moreover, Skadden reviewed a motion filed that sought to reconstitute the

creditors' committee as well a related objection.

43.    In addition, shortly after formation of the Creditors' Committee and the appointment

of its professionals, Skadden professionals assisted the Debtors in responding to information

requests by the Creditors' Committee and its professionals pursuant to which the Debtors provided

substantial background information to educate the Creditors' Committee.  Throughout the Case

Period, Skadden professionals assisted the Debtors in working with the Creditors' Committee and its

professionals on continuing information and related requests.  Moreover, throughout the Case

Period, Skadden attorneys communicated extensively with the representatives of the Creditors'

Committee regarding the progress and status of the Chapter 11 Cases.  The Debtors believe that

these efforts to keep the Creditors' Committee fully informed created a cooperative atmosphere and

constructive working relationship.  As a result, almost all issues have been addressed and resolved

out of Court without the need for unnecessary litigation between the Debtors and their creditor

constituencies.

44.     In connection with the foregoing services, Skadden professionals expended 72 hours during the Case Period for which Skadden seeks compensation of $53,021.  A general breakdown of these services is as follows:

| Name | Total Hours | Total Value |
|---|---|---|
| George N. Panagakis, Partner | 13.9 | $15,151 |
| Nick D. Campanario, Associate | 8.4 | $6,342 |
| Justin M. Winerman, Associate | 49.1 | $31,180 |
| Bradley G. Wilson, Associate | 0.6 | $348 |
| **Total** | **72** | **$53,021** |

Case Administration

45.     Skadden professionals devoted resources to the efficient and expeditious administration of the Chapter 11 Cases during the Case Period.  Work performed under this category may be grouped as follows: (a) general preparation for, and attendance at, court hearings; (b) communications with creditors and other parties in interest; (c) service and publication of notices; and (d) general case administration.

46.     Skadden professionals prepared for, attended, and represented the Debtors at a so-called "First-Day Hearing" early on in the Chapter 11 Cases at which time, among other matters, the Court granted relief that allowed the Debtors to continue certain normal business operations on a postpetition basis, including, but not limited to, authority to maintain existing cash management systems and to pay employees.  Skadden professionals also prepared for, attended, and represented the Debtors on all matters presented to the Court at omnibus and other hearings.

47.     In addition, to minimize administrative expenses, Skadden assisted the Debtors in obtaining certain requested relief to aid the efficient and economical administration of the Chapter 11 Cases, such as the establishment of regularly scheduled omnibus hearings in these cases.  The

14

omnibus hearings have streamlined the administration of the Chapter 11 Cases by establishing a schedule known to all parties in interest for Court hearings, thus eliminating unnecessary time and expenses spent appearing before the Court on numerous occasions each month.

48.    Furthermore, Skadden professionals advised the Debtors' management of the Debtors' rights and duties as debtors-in-possession, noting proscribed, permitted, and required conduct.  Skadden professionals frequently advised the Debtors with respect to specific business questions posed by management and by events occurring in the Chapter 11 Cases.  Part of the advice in this regard involved the participation of Skadden in periodic planning and strategy meetings with the Debtors' management team.

49.    In addition, Skadden' paraprofessionals docketed all pleadings and orders filed in the Chapter 11 Cases and worked with the Debtors' notice and claims agent to ensure that all entities entitled to notice were kept apprised of significant events during the Chapter 11 Cases.

50.    In connection with the foregoing services, Skadden professionals expended 73.7 hours for which Skadden seeks compensation of $48,446.  A general breakdown of these services is as follows:

| Name | Total Hours | Total Value |
|---|---|---|
| George N. Panagakis, Partner | 10.2 | $11,118 |
| Lynn M. McGovern, Partner | 1.0 | $1,090 |
| Justin M. Winerman, Associate | 47.7 | $30,290 |
| Bradley G. Wilson, Associate | 20.6 | $11,948 |
| Amelia R. Boone, Associate | 15 | $7,650 |
| Paraprofessionals | 8.7 | $2,697 |
| **Total** | **73.7** | **$48,446** |

MATTERS LESS THAN $15,000

15

51.     During the Case Period, Skadden professionals also devoted time to, among other things, (a) giving the Debtors' general corporate advice, including attending and participating in board meetings, and advising the Debtors on their operations; (b) assisting the Debtors in certain issues arising with the retention of professionals, including Skadden, during the Chapter 11 Cases; (c) reviewing, analyzing, and advising the Debtors concerning the Debtors' executory contracts; (d) advising the Debtors with regard to certain tax, insurance, and litigation issues; (e) advising the Debtors on certain asset dispositions; (f) reviewing the Debtors' monthly operating reports; and (g) and communicating with counsel to the U.S. Trustee regarding various matters.

52.     In connection with the foregoing services, Skadden professionals expended 100.5 hours during the Case Period for which Skadden seeks compensation of $60,167.  A general breakdown of these services is as follows:

| Matter Name | Total Hours | Total Value |
|---|---|---|
| Retention / Fee Matters (SASM&F) | 32.1 | $14,707 |
| General Corporate Advice | 12.7 | $9,502 |
| U.S. Trustee Matters | 9.7 | $7,038 |
| Executory Contracts (Personalty) | 10.3 | $6,453 |
| Tax Matters | 7.4 | $5,761 |
| Asset Dispositions (General) | 7.5 | $4,763 |
| Insurance | 7.1 | $4,217 |
| Retention / Fee Matters / Objections (Other) | 5.2 | $3,303 |
| Reports and Schedules | 6.6 | $2,761 |
| Business Operations / Strategic Planning | 1.0 | $1,090 |

| Litigation (General) | 0.9 | $572 |
| --- | --- | --- |
| **Total** | **100.5** | **$60,167** |

## RELIEF REQUESTED

53.     Skadden submits this Final Application covering the Case Period.  In keeping with

Skadden's commitment to self-policing its fees, charges, and disbursements, Skadden voluntarily

reduced its fees by $38,734.95.  Accordingly, by this Final Application, Skadden is requesting final

allowance of the payment of $361,989 in fees and the reimbursement of $4,583 in expenses, for an

aggregate amount of $366,572.[10]

54.     <u>Allowance of Professional Fees</u>. During the Case Period, attorneys and

paraprofessionals at Skadden billed an aggregate of 550.4 hours reflected in this Final Application

working on matters concerning the Chapter 11 Cases.  Of such time spent, 67 hours were spent by

partners, 442 hours were spent by associates, and 41.4 hours were spent by paraprofessionals.

55.     <u>Reimbursement of Charges and Disbursements</u>. As disclosed in the Retention

Application, it is Skadden's standard policy to charge its clients in all areas of practice for certain

charges and disbursements incurred in connection with such clients' cases.  The charges and

disbursements charged to clients include, among others, charges for in-house reproduction,

computer legal research, courier & express carriers, reproduction-color, outside research,  travel

expenses, postage for large mailings, electronic document management, and other charges

---

[10]     Skadden has already been paid $71,193 by the Debtors for compensation and expenses for January 2012, which
represents 90 percent of fees and 100 percent of expenses billed for that month. Therefore, Skadden is seeking
payment for the remaining $295,379 in fees and expenses it has not yet been paid.

customarily billed by law firms.  Certain charges and disbursements are not separately charged for under the bundled rate structure as described in the Engagement Agreement.

56.     Skadden has attempted to minimize the charges and disbursements associated with the Chapter 11 Cases, particularly for items such as reproduction and delivery.  In fact, during the Case Period, Skadden disbursed the following sums for actual and necessary charges and disbursements in the rendition of professional services in the chapter 11 cases, and requests that it be reimbursed therefor:

**Charges and Disbursements Incurred**

| Category | Amount Owed |
|---|---|
| In-House Production | $1,328 |
| Computer Legal Research | $1,255 |
| Courier & Express Carriers | $657 |
| Reproduction – color | $550 |
| Outside Research | $381 |
| Travel Expenses | $199 |
| Electronic Document Management | $135 |
| Long Distance Telephone | $48 |
| Local Travel | $17 |
| Business Meals | $13 |
| **Total:** | **$4,583** |

57.     A brief description of certain of the above categories is set forth below in more detail. The above charges and disbursements are reasonable and are consistent with those incurred by other

bankruptcy practitioners in other large, complex chapter 11 reorganization cases in this and other districts.

58.    In-House Reproduction.  As disclosed in the Engagement Agreement, Skadden charges 10 cents per page for photocopying performed in-house, while photocopying by outside vendors is billed to the Debtors at the actual invoice amount.

59.    Computer Legal Research.  Skadden charges for on-line computer research, such as Lexis-Nexis and Westlaw, at the actual vendors' invoice amounts, which amounts have been reduced by discounts Skadden receives from its vendors.  With respect to on-line research, Skadden professionals spent time researching various issues in connection with the drafting of the pleadings and resolving claims.

60.    Courier & Express Carriers.  Skadden charges the Debtors for outside messenger and express carrier services at the actual vendors' invoice amount which frequently involved discounts negotiated by Skadden.  Postage is charged at actual U.S. mail rates. During the Case Period, Skadden professionals incurred various charges for courier, express delivery, and postage.

61.    Outside Research.  Skadden charges the Debtors for outside research services based on the actual vendors' invoice amount.  These invoices relate to expenses incurred by Skadden in reviewing and accessing the pleadings filed in the Chapter 11 Cases through this Court's Pacer System.

62.    Travel Expenses / Local Travel.  Travel Expenses during the Case Period consisted of local travel for Skadden professionals to and from the Debtors' hearings and meetings.

63.    Long Distance Telephone.  Skadden does not charge the Debtor for local telephone calls or facsimile services.  Long distance telephone calls made from Skadden offices are charged to the Debtor based on applicable phone rates and are allocated among the Matter Categories based on the hours worked by professionals on such Matter Categories.

19

**REASONABLENESS OF FEES, CHARGES, AND DISBURSEMENTS**

64.     Section 330 of the Bankruptcy Code governs compensation of professionals in a
bankruptcy case and provides that, when determining the amount of reasonable compensation to
award to a professional, the Court should consider the nature, extent, and value of the services to the
bankrupt estate and all other relevant factors.  11 U.S.C. § 330(a)(3).

65.     In addition, Bankruptcy Rule 2016 provides that "an entity seeking interim or final
compensation for services or reimbursement of necessary expenses, from the estate shall file an
application setting forth a detailed statement of (1) the services rendered, time expended and
expenses incurred, and (2) the amounts requested."  Fed. R. Bankr. P. 2016(a).

66.     Courts in this District have stated that "[i]n reviewing fee applications, the
bankruptcy court must address three issues: were the services that are the subject of the application
properly compensable; if so, were they actual and necessary; if so, how will they be valued?"  In re
Lifschultz Fast Freight, 140 B.R. 482, 485 (Bankr. N.D. Ill. 1992) citing In re Wildman, 72 Bankr.
700, 704 (Bankr. N.D. Ill. 1987).

67.     In addition, with respect to expenses, Courts in this District have required that an
"[a]pplication should contain a detailed list of expenses including the date, the type and the
amount."  In re Convent Guardian Corp., 103 B.R. 937, 939 (Bankr. N.D. Ill. 1989).  In determining
whether an expense is necessary, this Court has stated that "an expense is necessary if it was
incurred because it was reasonably needed to accomplish the proper representation of the client."  Id.

68.     This Final Application meets these requirements.  First, Skadden' services are
properly compensable.  The Court entered the Retention Order pursuant to 11 U.S.C. § § 327(a) and
329 authorizing the retention of Skadden as attorneys for the Debtors.  Further, this Final
Application is being properly filed pursuant to 11 U.S.C. § 330.  Therefore, Skadden' services are
properly compensable.  See In re Lifschultz, 140 B.R. 482, 485 (court found that where law firm

20

was properly retained and law firm filed appropriate fee application, law firm's services were "properly compensable").

69.     Second, compensation is proper for services that are actual and necessary.  The Court in In re Lifschultz found that "[s]ervices necessary under section 330 are those services that aid the professional's client in fulfilling its duties under the Code."  Id.  Further, "[n]ecessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate."  Id.  The services provided by Skadden were actual and necessary.  As set forth in this Final Application, Skadden' attorneys have provided multi-disciplinary services to the Debtors on a frequent basis.  Skadden' services have assisted the Debtors to engage in an extensive negotiation process with the FDIC, the Creditors' Committee, and their other creditors, including JPM.

70.     Third, "[o]nce the court has determined that the services for which compensation is sought were properly compensable and actual and necessary, it must determine the value of those services."  Id. at 488.  That is, "the court must evaluate what the 'actual, necessary services' were worth to the client, based upon the five criteria listed in section 330(a)(1)."  Id. at 488.  In accordance with the factors enumerated in 11 U.S.C. § 330, the amount requested herein by Skadden is fair and reasonable, and fairly represents the value the Debtors received from Skadden' services, given:  (i) the nature of the bankruptcy cases, (ii) the novelty and complexity of the bankruptcy cases, (iii) the time and labor required to represent the Debtors effectively, (iv) the time limitations imposed by the bankruptcy cases, (v) the nature and extent of the services rendered, (vi) Skadden' experience, reputation and ability, (vii) the value of Skadden's services, and (viii) the cost of comparable services other than in a case under title 11 of the United States Code.

71.     Nature, complexity, and limited expediency of the cases.  To maximize the value of these estates, after extensive analysis of the Debtors' business, the Debtors and their professionals

21

pursued a fast-track strategy, with the goal of achieving the maximum value for the Debtors' assets, resulting in the Debtors' emergence from chapter 11 less than six months after filing for bankruptcy. Skadden professionals worked with all of the Debtors' constituents to reach resolutions with certain key creditors, including the FDIC, JPMorgan Chase Bank, N.A., and the Creditors' Committee. This required negotiations, often involving novel issues that are just now being litigated across the country in a number of similar bank holding company bankruptcy cases. The negotiations ultimately resulted in settlements that obviated the need for costly, risky, and time-consuming litigation that is eating away at the estates of many other bank holding companies in bankruptcy. Consequently, the Debtors and all of their creditors (some of whom may not have been entitled to any recovery if the FDIC had successfully litigated its claim instead of settling with the Debtors) benefited, and the Debtors were able to confirm a Plan a little more than five months after the Petition Date.

72.     Skadden professionals have assisted the Debtors by employing a streamlined structure that consisted of a small, core team familiar with the Debtors' capital structure and bankruptcy goals. This aggressive timetable required Skadden and other professionals involved in the Chapter 11 Cases to use every effort to seek to work quickly and efficiently in assisting the Debtors in meeting those goals.

73.     Experience of Skadden.  The experience of Skadden attorneys has also benefited the estates. Skadden is among the largest firms and has one of the largest restructuring groups in the country. As more fully set forth in the Retention Application, Skadden restructuring attorneys and attorneys from other practice areas have extensive knowledge and experience in dealing with the multitude and fast-paced issues that arise in similar chapter 11 proceedings. Accordingly, Skadden's depth of experience in chapter 11 matters has insured that a number of pressing matters could be addressed promptly.

22

74.     <u>Comparable services</u>.  Skadden's rates are consistent with rates charged to other clients in non-bankruptcy matters.  Moreover, its rate structure was disclosed clearly in its Retention Application, which the Court approved and as to which no constituents objected.

75.     The amounts sought by Skadden are consistent with the fees, charges, and disbursements incurred by other chapter 11 debtors in cases of similar size, complexity, and duration.  Accordingly, the cost of comparable services supports the Final Application, and the services performed during the Case Period more than warrant the allowance of compensation, particularly in view of the results achieved.

76.     <u>Compliance with Guidelines</u>.  Skadden believes that this Final Application, together with the attachments hereto, substantially complies in all material respects with the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 and the Local Bankruptcy Rules.  To the extent this Final Application does not comply in every respect with the requirements of such guidelines and rules, Skadden respectfully requests a waiver for any such technical non-compliance.

23

77.     WHEREFORE, Skadden respectfully requests that the Court (a) enter an order

substantially in the form of Exhibit C, permitting final allowance for services rendered and

reimbursement of charges and disbursements incurred during the Case Period in the amount of

$361,989 in fees and $4,583 in charges and disbursements and allowing final payment of amounts

for fees and expenses not already paid in an aggregate amount of $295,379 to be paid by the

Liquidation Trust Administrator out of its bank account(s), and (b) grant such other and further

relief as is just and equitable under the circumstances.


Dated: Chicago, Illinois                    /s/      George N. Panagakis
       July 31, 2012
                                    George N. Panagakis (ARDC No. 06205271)
                                    Justin M. Winerman (ARDC No. 6298779)
                                    SKADDEN ARPS SLATE MEAGHER
                                      & FLOM LLP
                                    155 North Wacker Drive
                                    Chicago, Illinois  60606
                                    (312) 407-0700

                                    Counsel for the Debtors and
                                    Debtors-in-Possession

24